UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANITA L. GENTRY, | : | Case No. 04-cv-29 |
| | : | |
| Plaintiff, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| WELL'S FARGO, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (Doc. 25) BE CONSTRUED AS A MOTION FOR SUMMARY JUDGMENT AND GRANTED; AND (2) THIS CASE BE CLOSED**

This matter is before the Court on defendant's motion to dismiss for failure to state a claim and/or for summary judgment (Doc. 25), plaintiff's memorandum in opposition to the motion (Doc. 27), and defendant's reply (Doc. 28).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Anita L. Gentry ("plaintiff"), an African-American (*see* Doc. 25, Ex. A), was hired by Wells Fargo Home Mortgage ("defendant") in December 2001 as a Mortgage Closing Specialist 1. (*Id.*, Ex. G.) In March or April 2002, plaintiff was assigned a new supervisor, Jean Sexton. (*See id.*, Ex. H at 26, 28.) In May or June 2002, plaintiff complained that Ms. Sexton made insulting remarks to her, calling her names

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

such as "cupcake," "honeybuns," and "chickie." (*Id.* at 28.) Plaintiff asked Ms. Sexton to stop making such remarks and requested diversity or sensitivity training. (*See id.* at 28-31; Doc. 25, Ex. L.) In response to plaintiff's request, her department was sent to a diversity training workshop in June 2002. (*Id.*, Ex. L.)

On May 24, 2002, plaintiff received a verbal warning from Ms. Sexton for poor customer service. (*Id.*, Ex. I.) In August 2002, plaintiff was moved to the Bond Department. (*Id.*, Ex. G at ¶ 3.) Her requests for formal training on bond loans were denied. (*Id.* at ¶ 8.) In December 2002, after being placed on a performance improvement plan ("PIP"), plaintiff began getting sick. (*See* Doc. 27-2 at 19.) On December 11, 2002, plaintiff went on medical leave and did not return to work until January 27, 2003. (*Id.*; Doc. 25, Ex. H. at 82.) Plaintiff was granted a second medical leave from February 4 to February 23, 2003, when she resigned her position. (*See* Doc. 25, Ex. G-2; Doc. 27-3 at 7.)

On July 1, 2003, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission alleging that she had been subjected to racial harassment and retaliation, that she had been denied promotions and the same working conditions as white employees, and that she had been forced to resign. (Doc. 25, Ex. A.) The Commission issued a notice of dismissal and right to sue on January 2, 2003. (*Id.*, Ex. B.)

Plaintiff initiated the present action on January 16, 2004, by filing a *pro se* complaint pursuant to 42 U.S.C. § 2000e-5 seeking redress for the alleged unlawful harassment and retaliation. (Doc. 1.) She amended her complaint twice, clarifying her

-2-

claims and adding factual allegations. (*See* Docs. 5, 19.) The second amended complaint was filed on November 30, 2004. (Doc. 19.)

Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and/or summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that plaintiff failed to make a *prima facie* showing of discrimination. (Doc. 25.) The matter is ripe for review.

## II. STANDARD OF REVIEW

Rule 12(b) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Fed. R. Civ. P. 12(b). *See also Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 348 (6th Cir. 2001).

Because the parties have presented matters outside the pleadings (*see* Doc. 25, Exs. A-L; Doc. 27), the motion to dismiss should be treated as a motion for summary judgment.

Summary judgment is proper if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts

which, under the governing substantive law, might affect the outcome of the action. *Anderson*, 477 U.S. at 248. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1981)).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 249. The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied sub nom. Superior Roll Forming Co. v. Interroyal Corp.*, 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate

specific facts in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

### III.  ANALYSIS

Defendant is entitled to judgment as a matter of law because plaintiff is unable to make a *prima facie* showing of discrimination based on disparate treatment, retaliation, or hostile environment. Defendant also is entitled to judgment as a matter of law because plaintiff cannot prevail on a claim of constructive discharge.

### A.

First, plaintiff has not made a *prima facie* showing of racial discrimination as a result of disparate treatment.

In order to prevail on a claim of disparate treatment. plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  In order to make this showing, in the absence of direct evidence of discrimination, she must demonstrate: (1) that she was in a protected class; (2) that she was qualified for the job that she held during the time in question; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly-situated individuals who were not members of her protected class. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802-03.

To sufficiently allege an adverse employment action, plaintiff must show a "materially adverse change in the terms of . . . employment, [such as] termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996) (internal quotation marks and citations omitted). The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). The "change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Vitt v. City of Cincinnati*, No. 03-3080, 2004 WL 1147256, at *4 (6th Cir. May 20, 2004) (unpublished) (quoting *Kocsis*, 97 F.3d at 886)).

The Sixth Circuit also has defined "similarly situated" employees for purposes of evaluating employment discrimination claims. "Similarly situated" employees are employees who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

If plaintiff makes a *prima facie* showing, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the action taken. *See Burdine*, 450 U.S. at 253. If defendant is able to meet this burden, plaintiff is then required to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were a pretext for discrimination. *Id.* A plaintiff can demonstrate pretext by: (1) offering proof that the given reason did not exist in fact; (2) establishing that, while the given reason is

-6-

factual, it was not the true reason for the allegedly discriminatory action; or (3) showing that the given reason was not sufficient for the action. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with plaintiff. *See Burdine,* 450 U.S. at 253.

Plaintiff cannot prevail on her claim of disparate treatment, in part, because she has not shown that she was treated differently than any similarly-situated individual who was not a member of her protected class. *See Mitchell*, 964 F.2d at 582-83. *See also Burdine*, 450 U.S. at 252-53; *McDonnell Douglas Corp.*, 411 U.S. at 802.

In support of her claim, plaintiff alleged that she was required to perform Truth-In-Lending ("TIL") checks as a part of the closing process but that a white employee, Tara Garrison, was not. (*See* Doc. 19 at 3.) Uncontroverted evidence shows that Ms. Garrison was not "similarly situated" to plaintiff for Title VII purposes:

> Plaintiff and Ms. Garrison worked on different teams and had different responsibilities. (See [Doc. 25,] Exhibit "G".) As a member of the Bond Team, Plaintiff received work assignments from Ms. Jones, who also provided information regarding Plaintiff's work performance utilized in Wells Fargo's evaluation of Plaintiff. (See Exhibit "G".) Ms. Garrison was a member of the Relationship Team that supported Wells Fargo's Louisville, Kentucky market. (See Exhibit "G".) Ms. Garrison reported to and received her work assignments from Ms. McCulley. (See Exhibit "G".) Ms. Jones had no involvement in the work assigned to Ms. Garrison or her evaluations. (See Exhibit "G".) In addition to the foregoing, the work Plaintiff performed differed from that Ms. Garrison performed.

(Doc. 28 at 4 n.2.)

Plaintiff also claims that her requests for training on bond loans was denied. (*See*

Doc. 19 at 3.) In particular, she alleges that her request for a training manual was denied. (*See* Doc. 25, Ex. H at 61.) Her claim lacks merit because she cannot identify a similarly situated employee who was treated differently. There is undisputed evidence that no similarly-situated employee was offered assistance or training for work on bond loans that was not offered to plaintiff. (*Id.*, Ex. G at ¶ 9.) Evidence that on-line training was provided to a department manager (*see* Doc. 27-3 at 9) is insufficient to establish plaintiff's claim because there has been no showing that she and the manager were "similarly situated." Moreover, in her deposition testimony, plaintiff acknowledged that a manual "may not even exist." (*Id.* Ex. H at 63.)

### B.

Plaintiff's claim of retaliation also fails.

In order to make a *prima facie* showing of retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence: (1) that she engaged in activity protected by Title VII; (2) that her exercise of such protected activity was known by defendant; (3) that, thereafter, defendant took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (citations omitted).

To establish a causal connection between the protected activity and the adverse employment action, plaintiff must present evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)

-8-

(quoting *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted)).

If a *prima facie* case is proven, then the same last two steps apply as in other discrimination cases. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). That is, defendant must articulate a legitimate, nondiscriminatory reason for the action taken and, if defendant is able to meet this burden, plaintiff must prove that the legitimate reasons offered by defendant were a pretext for discrimination. *See Burdine*, 450 U.S. at 253.

Plaintiff's retaliation claim fails because she cannot show an adverse action. Neither the verbal warning for poor customer service, nor the assignment to the Bond Department, nor the issuance of the PIP constitutes an adverse action. *See Kocsis*, 97 F.3d at 885-86; *see also Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (requiring an employee to comply with a reasonable performance or be subject to discipline does not constitute an adverse employment action).

## C.

Plaintiff's claims of harassment or hostile environment also lack merit.

A claim of discrimination may be based on "severe or pervasive" harassment. Moreover, such harassment as occurs following a discrimination complaint can constitute retaliation for the purposes of a Title VII action. *See Akers v. Alvey,* 338 F.3d 491, 498 (6th Cir. 2003) (citations omitted).

The standard for "severe or pervasive" harassment is "the same in the retaliation

context as in the sexual and racial discrimination contexts." *Id.* (quoting *Broska v. Henderson*, 70 Fed. Appx. 262, 269 (6th Cir. 2003)). "Under this standard, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This test has both an objective and a subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive. *Id.* (citation omitted).

Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

Whether harassment is sufficiently severe or pervasive to create an abusive work environment is "quintessentially a question of fact." *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 835-36 (6th Cir. 1996) (citation omitted). Nonetheless, harassing conduct, even if severe, is not actionable absent significant, probative evidence that the alleged harassing acts were based upon plaintiff's status as a member of a protected class. *See*

*Bowman*, 220 F.3d at 463-64.

Neither Ms. Sexton's isolated remarks or the denial of plaintiff's requests for bond loan training constitute facts sufficiently severe or pervasive to create an abusive work environment to satisfy the objective component. *See Akers*, 338 F.3d at 498. On the other hand, plaintiff has presented unchallenged evidence that she subjectively regarded the environment as hostile. (*See* Doc. 27-3 at 12-16.)

Nonetheless, even if plaintiff could establish that the alleged harassment was sufficiently severe or pervasive to create an abusive work environment, *see Crawford*, 96 F.3d at 835-36, she has failed to present any significant, probative evidence that the alleged harassing acts were based upon her status as a member of a protected class, in this case, African-American. *See Bowman*, 220 F.3d at 463-64.

**D.**

Finally, plaintiff cannot prevail on a claim of constructive discharge.

For a resignation to constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit, and the employee must actually quit. *Logan v. Denny's*, 259 F.3d 558, 568-69 (6th Cir. 2001).

Discrimination alone, without aggravating factors, is not sufficient for a claim of constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001). In particular, courts have held that constructive discharge

requires a greater degree of harassment than that required by a hostile environment claim. *See id.*; *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999); *see also Campbell v. CCL Custom Mfg., Inc.*, 2006 WL 222814, at *9 (W.D. Tenn. Jan. 30, 2006). Thus, where a claim for hostile work environment fails, a claim of constructive discharge based on hostile environment also fails. *Campbell*, 2006 WL 222814, at *9 (citing *Plautz v. Potter*, No. 04-6105, 2005 WL 3479840, at *7 (6th Cir. Dec. 21, 2005) (*per curiam*) (holding that where the complained of actions do not rise to the level of a hostile work environment, "they necessarily do not rise to the level of compelling a reasonable person to resign"); *Disler v. Target Corp.*, 2005 WL 2127813, at *20 (E.D. Tenn. Aug. 31, 2005) (holding that it "naturally follows" that a plaintiff cannot prevail on a claim for constructive discharge when that allegation is based on a failed hostile work environment claim)).

In support of her claim of a constructive discharge, plaintiff states simply that she "could not handle" the retaliation, disparate treatment, and hostile work environment that had been created. (Doc. 27-1 at 3.) She alleges that after she returned to work from her first medical leave, "the environment remained hostile and nothing about training was offered." (*Id.*) Because she cannot establish the existence of harassment sufficient to constitute a hostile work environment or other discriminatory treatment, plaintiff cannot succeed on her claim that she was constructively discharged. *See Brown*, 237 F.3d at 566.

## IV.  CONCLUSION

Plaintiff has not met her burden of showing that a genuine issue of material fact exists with respect to her claims of discrimination or constructive discharge.

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion to dismiss and/or for summary judgment (Doc. 25) be construed as a motion for summary judgment and **GRANTED**.  As no further matters remain pending for this Court's review, it is further recommended that this case be **CLOSED.**


Date:   2/17/06                              s/Timothy S. Black                    
                                            Timothy S. Black
                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANITA L. GENTRY, | : | Case No. 04-cv-29 |
| | : | |
| Plaintiff, | : | Weber, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| WELLS FARGO, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof.  That period may be extended by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).