UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANITA L. GENTRY,

                Plaintiff

        v.                             C-1-04-29

WELLS FARGO,

                Defendant

## ORDER

This matter is before the Court upon the Report and Recommendation ("R&R") of the United States Magistrate Judge (doc. no. 31), plaintiff's objections (doc. no. 34), defendant's response (doc. no. 37), and plaintiff's response (doc. no. 38).  The Magistrate Judge concluded that no genuine issues of material fact existed with respect to plaintiff's claims of discrimination based on disparate treatment, retaliation, or hostile environment, or her claim based on a constructive discharge, and defendant was entitled to judgment as a matter of law.  The Magistrate Judge therefore recommended that defendant's Motion to Dismiss and/or for Summary Judgment be granted.

Plaintiff objects to the R&R on the grounds that his findings and conclusions are contrary to law.

2

## I. Factual Background

In the R&R, the Magistrate Judge set forth the relevant factual and procedural background for his recommendation as follows.

Plaintiff Anita L. Gentry ("plaintiff"), an African-American (*see* Doc. 25, Ex. A), was hired by Wells Fargo Home Mortgage ("defendant") in December 2001 as a Mortgage Closing Specialist 1.  (*Id.*, Ex. G.)  In March or April 2002, plaintiff was assigned a new supervisor, Jean Sexton.  (*See id.*, Ex. H at 26, 28.)  In May or June 2002, plaintiff complained that Ms. Sexton made insulting remarks to her, calling her names such as "cupcake," "honeybuns," and "chickie."  (*Id.* at 28.)  Plaintiff asked Ms. Sexton to stop making such remarks and requested diversity or sensitivity training.  (*See id.* at 28-31; Doc. 25, Ex. L.)  In response to plaintiff's request, her department was sent to a diversity training workshop in June 2002.  (*Id.*, Ex. L.)

On May 24, 2002, plaintiff received a verbal warning from Ms. Sexton for poor customer service.  (*Id.*, Ex. I.)  In August 2002, plaintiff was moved to the Bond Department.  (*Id.*, Ex. G at ¶ 3.)  Her requests for formal training on bond loans were denied.  (*Id.* at ¶ 8.)  In December 2002, after being placed on a performance improvement plan ("PIP"), plaintiff began getting sick.  (*See* Doc. 27-2 at 19.)  On December 11, 2002, plaintiff went on medical leave and did not return to work until January 27, 2003.  (*Id.*; Doc. 25, Ex. H. at 82.)  Plaintiff was granted a second medical

leave from February 4 to February 23, 2003, when she resigned her position[1].  (*See* Doc. 25, Ex. G–2; Doc. 27–3 at 7.)

On July 1, 2003, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission alleging that she had been subjected to racial harassment and retaliation, that she had been denied promotions and the same working conditions as white employees, and that she had been forced to resign.  (Doc. 25, Ex. A.)  The Commission issued a notice of dismissal and right to sue on January 2, 2003 (*sic*)[2].  (*Id.*, Ex. B.)

Plaintiff initiated the present action on January 16, 2004, by filing a *pro se* complaint pursuant to 42 U.S.C. § 2000e–5 seeking redress for the alleged unlawful harassment and retaliation.  (Doc. 1.)  She amended her complaint twice, clarifying her claims and adding factual allegations.  (*See* Docs. 5, 19.)  The second amended complaint was filed on November 30, 2004.  (Doc. 19.)

Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and/or summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that plaintiff failed to make a *prima facie* showing of discrimination.  (Doc. 25.)  The matter is ripe for review.

---

[1]  Plaintiff had applied for a job with another entity and was hired.  She entered her new employment on or about February 4, 2003.

[2]  The Right to Sue letter was issued on January 2, 2004.

4

## II.  Summary Judgment Standard

The Magistrate Judge set forth the standard for deciding defendant's Motion in his R&R as follows.

Rule 12(b) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Fed. R. Civ. P. 12(b).  *See also Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 348 (6th Cir. 2001).

Because the parties have presented matters outside the pleadings (*see* Doc. 25, Exs. A–L; Doc. 27), the motion to dismiss should be treated as a motion for summary judgment.

Summary judgment is proper if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the governing substantive law, might affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  All facts and inferences must

be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1981)).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial.  *Anderson*, 477 U.S. at 249.  The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts.  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied sub nom. Superior Roll Forming Co. v. Interroyal Corp.*, 494 U.S. 1091 (1990).  Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989), and to designate specific facts in dispute.  *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404–05.

6

### III. Analysis of the Magistrate Judge

The Magistrate Judge set forth his analysis in the R&R as follows.

Defendant is entitled to judgment as a matter of law because plaintiff is unable to make a *prima facie* showing of discrimination based on disparate treatment, retaliation, or hostile environment. Defendant also is entitled to judgment as a matter of law because plaintiff cannot prevail on a claim of constructive discharge.

### A.

First, plaintiff has not made a *prima facie* showing of racial discrimination as a result of disparate treatment.

In order to prevail on a claim of disparate treatment, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  In order to make this showing, in the absence of direct evidence of discrimination, she must demonstrate: (1) that she was in a protected class; (2) that she was qualified for the job that she held during the time in question; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly-situated individuals who were not members of her protected class.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at  802-03.

To sufficiently allege an adverse employment action, plaintiff must show a "materially adverse change in the terms of . . . employment, [such as] termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996) (internal quotation marks and citations omitted). The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). The "change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Vitt v. City of Cincinnati*, No. 03-3080, 2004 WL 1147256, at *4 (6th Cir. May 20, 2004) (unpublished) (quoting *Kocsis*, 97 F.3d at 886)).

The Sixth Circuit also has defined "similarly situated" employees for purposes of evaluating employment discrimination claims. "Similarly situated" employees are employees who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

If plaintiff makes a *prima facie* showing, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the action taken. *See Burdine*, 450 U.S. at 253. If defendant is able to meet this burden, plaintiff is then required to prove by a preponderance of the evidence that the legitimate reasons offered by

defendant were a pretext for discrimination. *Id.* A plaintiff can demonstrate pretext by: (1) offering proof that the given reason did not exist in fact; (2) establishing that, while the given reason is factual, it was not the true reason for the allegedly discriminatory action; or (3) showing that the given reason was not sufficient for the action. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with plaintiff. *See Burdine,* 450 U.S. at 253.

Plaintiff cannot prevail on her claim of disparate treatment, in part, because she has not shown that she was treated differently than any similarly-situated individual who was not a member of her protected class. *See Mitchell*, 964 F.2d at 582-83. *See also Burdine*, 450 U.S. at 252-53; *McDonnell Douglas Corp.*, 411 U.S. at 802.

In support of her claim, plaintiff alleged that she was required to perform Truth-In-Lending ("TIL") checks as a part of the closing process but that a white employee, Tara Garrison, was not. (*See* Doc. 19 at 3.) Uncontroverted evidence shows that Ms. Garrison was not "similarly situated" to plaintiff for Title VII purposes:

> Plaintiff and Ms. Garrison worked on different teams and had different responsibilities. (See [Doc. 25,] Exhibit "G".) As a member of the Bond Team, Plaintiff received work assignments from Ms. Jones, who also provided information regarding Plaintiff's work performance utilized in Wells Fargo's evaluation of Plaintiff. (See Exhibit "G".) Ms. Garrison was a member of the Relationship Team that supported Wells Fargo's Louisville, Kentucky market. (See Exhibit "G".) Ms. Garrison reported to and received her work assignments from Ms. McCulley. (See Exhibit "G".)

9

Ms. Jones had no involvement in the work assigned to Ms. Garrison or her evaluations. (See Exhibit "G".) In addition to the foregoing, the work Plaintiff performed differed from that Ms. Garrison performed.

(Doc. 28 at 4 n.2.)

Plaintiff also claims that her requests for training on bond loans was (*sic*)[3] denied. (*See* Doc. 19 at 3.) In particular, she alleges that her request for a training manual was denied. (*See* Doc. 25, Ex. H at 61.) Her claim lacks merit because she cannot identify a similarly situated employee who was treated differently. There is undisputed evidence that no similarly-situated employee was offered assistance or training for work on bond loans that was not offered to plaintiff. (*Id.*, Ex. G at ¶ 9.) Evidence that on-line training was provided to a department manager (*see* Doc. 27-3 at 9) is insufficient to establish plaintiff's claim because there has been no showing that she and the manager were "similarly situated." Moreover, in her deposition testimony, plaintiff acknowledged that a manual "may not even exist." (*Id.* Ex. H at 63.)

## B.

Plaintiff's claim of retaliation also fails.

In order to make a *prima facie* showing of retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence: (1) that she engaged in activity protected by Title VII; (2) that her exercise of such protected activity was known by defendant; (3) that, thereafter, defendant took an employment action adverse to

---

[3] Plaintiff also claims that her requests for training on bond loans were denied.

plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (citations omitted).

To establish a causal connection between the protected activity and the adverse employment action, plaintiff must present evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *Equal Employment Opportunity Comm'n v.  Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting  *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted)).

If a  *prima facie* case is proven, then the same last two steps apply as in other discrimination cases.  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  That is, defendant must articulate a legitimate, nondiscriminatory reason for the action taken and, if defendant is able to meet this burden, plaintiff must prove that the legitimate reasons offered by defendant were a pretext for discrimination.  *See Burdine*, 450 U.S. at 253.

Plaintiff's retaliation claim fails because she cannot show an adverse action. Neither the verbal warning for poor customer service, nor the assignment to the Bond Department, nor the issuance of the PIP constitutes an adverse action.  *See Kocsis*, 97 F.3d at 885–86; *see also Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (requiring an employee to comply with a reasonable performance or be subject to discipline does not constitute an adverse employment action).

11

## C.

Plaintiff's claims of harassment or hostile environment also lack merit.

A claim of discrimination may be based on "severe or pervasive" harassment. Moreover, such harassment as occurs following a discrimination complaint can constitute retaliation for the purposes of a Title VII action. *See Akers v. Alvey,* 338 F.3d 491, 498 (6th Cir. 2003) (citations omitted).

The standard for "severe or pervasive" harassment is "the same in the retaliation context as in the sexual and racial discrimination contexts." *Id.* (quoting *Broska v. Henderson*, 70 Fed. Appx. 262, 269 (6th Cir. 2003)). "Under this standard, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This test has both an objective and a subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive. *Id.* (citation omitted).

Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

Whether harassment is sufficiently severe or pervasive to create an abusive work environment is "quintessentially a question of fact." *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 835-36 (6th Cir. 1996) (citation omitted). Nonetheless, harassing conduct, even if severe, is not actionable absent significant, probative evidence that the alleged harassing acts were based upon plaintiff's status as a member of a protected class. *See Bowman*, 220 F.3d at 463-64.

Neither Ms. Sexton's isolated remarks or the denial of plaintiff's requests for bond loan training constitute facts sufficiently severe or pervasive to create an abusive work environment to satisfy the objective component. *See Akers*, 338 F.3d at 498. On the other hand, plaintiff has presented unchallenged evidence that she subjectively regarded the environment as hostile. (*See* Doc. 27-3 at 12-16.)

Nonetheless, even if plaintiff could establish that the alleged harassment was sufficiently severe or pervasive to create an abusive work environment, *see Crawford*, 96 F.3d at 835-36, she has failed to present any significant, probative evidence that the alleged harassing acts were based upon her status as a member of a protected class, in this case, African-American. *See Bowman*, 220 F.3d at 463-64.

13

## D.

Finally, plaintiff cannot prevail on a claim of constructive discharge.

For a resignation to constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit, and the employee must actually quit. *Logan v. Denny's*, 259 F.3d 558, 568–69 (6th Cir. 2001).

Discrimination alone, without aggravating factors, is not sufficient for a claim of constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001).  In particular, courts have held that constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.  *See id.*; *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999); *see also Campbell v. CCL Custom Mfg., Inc.*, 2006 WL 222814, at *9 (W.D. Tenn. Jan. 30, 2006).  Thus, where a claim for hostile work environment fails, a claim of constructive discharge based on hostile environment also fails. *Campbell*, 2006 WL 222814, at *9 (citing *Plautz v. Potter*, No. 04–6105, 2005 WL 3479840, at *7 (6th Cir. Dec. 21, 2005) (*per curiam*) (holding that where the complained of actions do not rise to the level of a hostile work environment, "they necessarily do not rise to the level of compelling a reasonable person to resign"); *Disler v. Target Corp.*, 2005 WL 2127813, at *20 (E.D. Tenn. Aug. 31, 2005) (holding that it "naturally follows" that a plaintiff cannot prevail on a claim

14

for constructive discharge when that allegation is based on a failed hostile work environment claim)).

In support of her claim of a constructive discharge, plaintiff states simply that she "could not handle" the retaliation, disparate treatment, and hostile work environment that had been created.  (Doc. 27-1 at 3.)  She alleges that after she returned to work from her first medical leave, "the environment remained hostile and nothing about training was offered." (*Id.*)  Because she cannot establish the existence of harassment sufficient to constitute a hostile work environment or other discriminatory treatment, plaintiff cannot succeed on her claim that she was constructively discharged.  *See Brown*, 237 F.3d at 566.

## IV.  Plaintiff's Objections to the R&R

Plaintiff objects to the recommendation of the Magistrate Judge because the facts cited by the Court are disputed and deserve to be examined by a trier of facts. (doc. no. 34, p. 1).  Her objections are addressed below.

## A.  Plaintiff's Statistical Assertion

In her objections to the R&R, for the first time in these proceedings, plaintiff states, "Defendant maintained a discriminatory work environment which is evidenced by the fact that out of a group of 50 to 60 individuals hired in Dec. of 2001, 10 to 15 of whom were African-American, by Dec. of 2002, five of the African-Americans in the original group had experienced job actions and had left under pressure or had

been discharged. No white employees in the original group had been discharged." (doc. no. 34, pp. 1-2).

The Court finds that the above statistic is unsubstantiated hearsay and thus, at the summary judgment stage, cannot be considered in support of plaintiff's claims. When, as in the present case, the defendant moves for summary judgment on the ground that the plaintiff fails to establish an element essential to her claim, the plaintiff is required by Fed.R.Civ.P. 56, if she wants the motion denied, to present evidence of evidentiary quality--either admissible documents or attested testimony, such as that found in depositions or in affidavits--demonstrating the existence of a genuine issue of material fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2137 (1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986). Plaintiff need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex*, 477 U.S. at 324. However, Rule 56(e) does not permit a party to oppose a summary judgment motion through assertions contained only in the party's pleadings. *Id.*

Here, plaintiff has not presented any evidence which supports her allegation that five African-Americans had experienced job actions and had left under pressure or had been discharged by defendant between 12/01 and 12/02. She has not presented any evidence that no white employees had been discharged by the defendant during the same time period. Furthermore, when plaintiff was asked at a hearing where she received the above information, she replied that she had heard it

from others around the office.  Plaintiff further stated that she had personal knowledge of only one African-American employee who was fired in the time period cited above.  Thus, plaintiff's hearsay conclusions, contained only in her objections to the R&R, cannot form the bases for statistically significant evidence.  The objection is **DENIED**.

### B.  Disparate Treatment Claim

Plaintiff specifically objects to the recommendation of the Magistrate Judge that the uncontroverted evidence shows that Tara Garrison was not similarly situated to plaintiff for Title VII purposes.  (doc. no. 34, p. 4).

The Report and Recommendation of the Magistrate Judge relied on Melissa Koop's declaration (doc. no. 25, ex. G) in making its conclusions.  The R&R states as follows:

> Plaintiff and Ms. Garrison worked on different teams and had different responsibilities. (See [Doc. 25], Exhibit "G".) As a member of the Bond Team, Plaintiff received work assignments from Ms. Jones, who also provided information regarding Plaintiff's work performance utilized in Wells Fargo's evaluation of Plaintiff. (See Exhibit "G".) Ms. Garrison was a member of the Relationship Team that supported Wells Fargo's Louisville, Kentucky market. (See Exhibit "G".) Ms. Garrison reported to and received her work assignments from Ms. McCulley. (See Exhibit "G".) Ms. Jones had no involvement in the work assigned to Ms. Garrison or her evaluations. (See Exhibit "G".) In addition to the foregoing, the work Plaintiff performed differed from that Ms. Garrison performed.

(doc. no. 31, p. 7).

Upon a *de novo* review, the Court makes the following findings of fact:

1.  Plaintiff was assigned to the Bond team.  Her work leader was Betsy Jones.  (doc. no. 25, ex. G).

2.  Tara Garrison was assigned to the Relationship team.  Betsy Jones was not the work leader of the Relationship team.  (doc. no. 25, ex. G).

3.  On August 22, 2002, Susan McCulley emailed instructions to all of the employees whom she managed, including Jones, Garrison, and plaintiff.  McCulley instructed the employees, "The one closer has 20 files to get out today – 14 to get out tomorrow and 37 to get out by Monday or Tuesday.  An average closer should be able to close 8–9 files per day.  Tara can do 14–15 per day and Anita Gentry is helping today to help with the rest of the files.  The closer has to make sure that we get the prelim hud back – the TIL is balanced and checked and all the fees are correct."  (doc. no. 27, ex. B).

4.  On December 16, 2002, McCulley issued instructions to her teams including Jones, Garrison and plaintiff, advising them "[W]e have to stop waiving, changing or moving fees at the closing table.  This is throwing off our compliance and our TILS."  (doc. no. 27, Ex. D(1)).

5.  Plaintiff helped Tara Garrison close her loans at times.  (Pl. Dep., p. 66).

6.  Plaintiff and Tara Garrison held the same job title, mortgage closing specialist 1.  (doc. no. 25, Ex. G).

Based on these facts, the Court finds that a factual dispute exists whether plaintiff and Tara Garrison were similarly situated employees for Title VII purposes.  Clearly Garrison and plaintiff were both supervised by McCulley, even if McCulley was not their most immediate supervisor.  They both received the same instructions from McCulley and performed similar functions.  Therefore, the Court sustains plaintiff's

18

objection to the Magistrate Judge's conclusion that plaintiff and Tara Garrison were not similarly situated employees for Title VII purposes.

However, the Court nevertheless finds that plaintiff's disparate treatment claim fails because she has not shown that she suffered an adverse employment action and because she has not shown that she was treated differently than a similarly situated employee. The Court therefore modifies the R&R by deleting Part III(A) and replacing it with the following:

A.

First, plaintiff's claim of disparate treatment on the basis of race fails as a matter of law.

In order to prevail on a claim of disparate treatment, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). In order to make this showing, in the absence of direct evidence of discrimination, she must demonstrate: (1) that she was in a protected class; (2) that she was qualified for the job that she held during the time in question; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly-situated individuals who were not members of her protected class. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1094, n.6 (1981); *McDonnell Douglas Corp.*, 411 U.S. at 802-03, 93 S.Ct. at 1824.

If plaintiff makes a *prima facie* showing, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the action taken. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1089. If defendant is able to meet this burden, plaintiff is then required to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were a pretext for discrimination. *Id.* A plaintiff can demonstrate pretext by: (1) offering proof that the given reason did not exist in fact; (2) establishing that, while the given reason is factual, it was not the true reason for the allegedly discriminatory action; or (3) showing that the given reason was not sufficient for the action. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with plaintiff. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1089.

Plaintiff has presented the following facts to support her claim of disparate treatment: 1) she received a verbal warning for poor customer service; 2) she was transferred to defendant's Bond group; 3) she did not receive formal training for her position in the Bond group; 4) defendant required her to perform Truth-In-Lending ("TIL") checks on the loans she was assigned to close, while defendant did not require Tara Garrison, a similarly-situated employee, to perform such checks; 5) Tara Garrison's salary was $6500.00 more than plaintiff's salary.

20

Plaintiff's first two factual allegations are unavailing because they did not constitute materially adverse changes in the terms of plaintiff's employment. Several factors are relevant in determining whether an employment action constitutes a materially adverse change in the terms of employment, including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885–86 (6th Cir. 1996) (internal quotation marks and citations omitted). "The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). The "change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis*, 97 F.3d at 886 (citations omitted).

First, the verbal warning for poor customer service does not constitute an adverse action. *See Kocsis,* 97 F.3d at 885–86; *see also Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (requiring an employee to comply with a reasonable performance or be subject to discipline does not constitute an adverse employment action). Second, plaintiff's transfer to the Bond group does not constitute an adverse action because plaintiff has not shown that she received any reduction in pay or benefits, or lesser job responsibilities as a result of her transfer. *See Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987)

21

(reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims).

Plaintiff's allegation with regard to the lack of training provided to her is also unavailing because plaintiff has not shown that a similarly situated employee was treated differently. There is undisputed evidence that no similarly situated employee was offered assistance or training for work on bond loans that was not offered to plaintiff. (doc. no. 25, ex. G). Evidence that on-line training was provided to a department manager (*see* doc. no. 27, ex. H) is insufficient to establish plaintiff's claim because there has been no showing that she and the manager were similarly situated. Moreover, in her deposition testimony, plaintiff acknowledged that a training manual "may not even exist." (Pl. Dep., p. 63.) Plaintiff admits that she could ask her supervisor questions if she needed help performing her duties. (Pl. Dep., p. 61).

Likewise, plaintiff has not shown that a similarly situated employee was not required to perform TIL checks. McCulley instructed both Garrison and plaintiff to perform TIL checks on more than one occasion. (doc. no. 27, ex. B, ex. D(1)). Plaintiff has not presented any evidence of disparate treatment with regard to the TIL checks. Even if plaintiff had shown that Ms. Garrison was not required to perform TIL checks while plaintiff was, such a requirement would not constitute a materially adverse employment action. Such checks are merely administrative

tasks that fall into the category of *de minimis* employment actions which are not sufficient to support a disparate treatment claim.

Finally, plaintiff argues in support of her disparate treatment claim that Garrison's salary was $34,000/year while plaintiff's salary was $27,500/year. (doc. no 34, p. 5).  However, like the statistic plaintiff cited regarding the number of African-Americans fired by defendant between 12/01 and 12/02, *supra* pp. 14–15, plaintiff makes this assertion for the first time in her objections to the R&R. She provides no evidence, other than her bare assertion, of the actual amount of Garrison's salary or why the salaries were different.

Even if the Court could properly conclude that the salary discrepancy existed, there is no evidence that racial animus caused the discrepancy.  Rather, there is sufficient evidence for the Court to conclude that the salary differential was the legitimate result of Garrison's work performance relative to plaintiff's.  It is clear that Garrison was closing 14–15 loans a day.  (doc. no. 27, ex. B).  Plaintiff, according to her own submissions, was closing only five to six loans a day.  This fact is established by Exhibit M to Plaintiff's Response and Objections to the R&R (doc. no. 34), in which she claims that in September, 2002, she processed 97 loans, in October 2002 – 116 loans and November, 2002 – 114 loans.  Assuming 20 work days in a month, plaintiff closed on average between five and six loans a day when the average closer was expected to close eight or nine loans a day. (doc.

no 27, ex. B).   The differential in salary of $6,500.00 was objectively reasonable based on the amount of work done.

## C.  Retaliation Claim

Since the date that the R&R was issued, the Supreme Court has clarified the proper method for analyzing a Title VII retaliation claim.  *See Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006).  In *Burlington*, the Supreme Court addressed how harmful an allegedly retaliatory act must be to fall within the scope of Title VII's anti–retaliation provision.  *Id.* at 2410.  Because the Magistrate Judge's conclusion rested precisely on this issue, the Court is compelled to recite the proper legal framework, as provided in *Burlington,* and apply it to this case. The Court therefore modifies the R&R by deleting Part III(B) and replacing it with the following:

B.

Plaintiff's claim of retaliation also fails.

In order to make a *prima facie* showing of retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence: (1) that she engaged in activity protected by Title VII; (2) that her exercise of such protected activity was known by defendant; (3) that, thereafter, defendant took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (citations omitted).

24

The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. *Burlington,* 126 S.Ct. at 2414.  For the alleged harm to constitute actionable retaliation, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse. *Id.* at 2415.  The alleged retaliatory action must be severe enough to risk dissuading a reasonable worker from making or supporting a charge of discrimination. *Id.* "The anti-retaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (internal quotations and citations omitted).

First, the Court must identify the protected action taken by the plaintiff.  The earliest possible protected action taken by plaintiff was her complaint regarding Jean Sexton's remarks, which plaintiff brought up at a meeting with Ms. Sexton and Judy Hartmann on May 24, 2002.  Plaintiff's complaints about these remarks stemmed from the fact that they were sexual in nature.  (Pl. Dep., pp. 28-29).  Plaintiff does not bring claims for sexual discrimination or harassment, however.  Plaintiff is claiming racial discrimination.  Her Charge of Discrimination filed with the EEOC (doc. no. 25, ex. A) refers only to racial harassment and retaliation.  There is no evidence in the record that could support an inference that Ms.

Sexton's remarks were based on plaintiff's race, or that defendant's alleged retaliation for plaintiff's complaint about these remarks was based on plaintiff's race.   Thus, the Court finds that plaintiff's complaint about Ms. Sexton's remarks completely irrelevant to her retaliation claim.

The next instance of protected activity taken by plaintiff was her filing of the charge of discrimination with the Ohio Civil Rights Commission on July 1, 2003. (doc. no. 25, ex. A).  At that point in time, plaintiff had resigned from her employment with defendant.  There is no evidence that defendant took any action after July 1, 2003, which could qualify as an adverse action under the *Burlington* standard.

### D.  Plaintiff's Remaining Objections

Upon a *de novo* review of the record, especially in light of plaintiff's objections, the Court finds that plaintiff's remaining objections have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court.  The Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and, as modified herein, properly applied them to the particular facts of this case and agrees with the Judge that no genuine issues of material fact exist with respect to her claims of discrimination or constructive discharge.  Accordingly, the Court hereby ADOPTS  the report and recommendation of  the United States Magistrate Judge as herein modified.   Defendant's Motion to Dismiss and/or for

26

Summary Judgment is construed as a Motion for Summary Judgment and is

**GRANTED.**   This case is **DISMISSED AND TERMINATED** on the docket of this Court

at plaintiff's cost.

   **IT IS SO ORDERED.**

_____s/Herman J. Weber_____
Herman J. Weber, Senior Judge
United States District Court
